UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KELLY LAROE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-30020-MGM |
| | ) | |
| COMMONWEALTH OF | ) | |
| MASSACHUSETTS DIVISION OF | ) | |
| THE BUREAU OF SPECIAL | ) | |
| EDUCATION APPEALS and | ) | |
| SPRINGFIELD PUBLIC SCHOOLS, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR PROTECTIVE
ORDER, MOTION FOR EXTENTION [sic] OF TIME ON OTHER REQUESTS, AND ODER
[sic] FOR DEFENDAT'S [sic] TO COMPLY WITH THE LIMIT OF 25 INTERROGATORIES
(Dkt. No. 141)

I.      **Introduction**

Before the court is a motion by the plaintiff Kelly LaRoe ("Plaintiff") for an order

protecting her from responding to discovery propounded by the defendant Springfield Public

Schools ("SPS") related to an unlawful retaliation claim she has asserted against SPS (Dkt. No.

141). Plaintiff is self-represented in the instant action. So far as appears from the information

before the court, she has not responded to SPS's interrogatories or document production requests

related to the claim other than by providing a release for SPS and the Bureau of Special

Education Appeals ("BSEA") (collectively, "Defendants") to obtain medical records from

providers and filing the instant motion for a protective order. Following a review of the parties'

filings, Plaintiff's motion is granted in part and denied in part. To the extent required by this

order, Plaintiff must answer SPS's interrogatories and produce documents within 45 days of the

date of this order. No fees or costs are awarded to either party.

1

## II.    Plaintiff's claims

Plaintiff's action is multifaceted, warranting discovery by the defendants on a number of fronts. First, she seeks judicial review pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, of two BSEA decisions related to special education services the City of Springfield provided to her son. As to the second of these BSEA decisions (*Ollie II*), Plaintiff did not timely file an appeal with this court. Thus, an initial question as to that claim, and one on which discovery is necessary, is whether the deadline for filing the appeal in *Ollie II* should be equitably tolled. Plaintiff also has a surviving claim against SPS for unlawful retaliation against her in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et. seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, for advocating for her son's right to be free from disability-based discrimination in the provision of a Free and Appropriate Education ("FAPE") as required by the IDEA.

## III.    Relevant procedural background

Plaintiff filed her initial complaint on February 8, 2021 (Dkt. No. 1), and an amended complaint on September 24, 2021 (Dkt. No. 31). Defendants filed partial motions to dismiss (Dkt. Nos. 32, 34), which the presiding District Court Judge granted in part and denied in part (Dkt. Nos. 79). This court held a scheduling conference on June 7, 2023, and entered an order that set differing schedules for Plaintiff's various surviving claims, including a June 23, 2023, deadline for the parties to submit a proposed schedule relating to Plaintiff's retaliation claims against SPS, which deadline was extended at the parties' request to July 7, 2023 (Dkt. No. 105,

110, 114).[1]  The parties initially proposed a January 2, 2024, deadline for the completion of non-expert discovery, but they jointly requested, and the court approved, a 30-day extension to February 2, 2024, due to Plaintiff's request for an additional 30 days to respond to SPS's August 15, 2023, written discovery requests based on her representations that she had never received the requests and was suffering from COVID (Dkt. Nos. 111, 136-137; 145 at ¶¶ 2-3; 145-1; 145-2). On September 11, 2023, the court granted SPS's motion to compel Plaintiff to answer interrogatories related to the possible equitable tolling of the time to file an appeal of the *Ollie II* decision (Dkt. No. 131) and thereafter granted the motion to extend the deadlines related to the *Ollie II* appeal (Dkt. No. 132).  On February 7, 2024, the court extended deadlines related to Plaintiff's appeal of *Ollie I* and once again extended the deadline for completion of non-expert discovery regarding Plaintiff's retaliation claim to May 24, 2024 (Dkt. No. 175).  Plaintiff's motion for a protective order concerning discovery is addressed to SPS's written discovery requests related to Plaintiff's retaliation claim.

> IV.    **Analysis**

>> A.    Applicable legal principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ….  Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  Before 2015, Fed. R. Civ. P. 26(b)(2)(C)(iii) limited overly burdensome discovery and required proportionality, but the

---

[1]The scheduling order included deadlines for a claim against BSEA for failure to accommodate Plaintiff as required by the ADA, but that claim was subsequently dismissed (Dkt. No. 151).

2015 amendments increased the emphasis on the concept of proportionality by relocating the requirement to 26(b)(1). *See* Fed. R. Civ. P. 26 advisory committee's notes to the 2015 amendment. *See also, e.g., Fed. Energy Regulatory Comm'n v. Silkman*, No. 1:16-cv-00205-JAW, 2017 WL 6597510, at *7 (D. Me. Dec. 26, 2017) ("[T]he 2015 amendments to the Federal Rules of Civil Procedure moved the proportionality factors in Rule 26 to a place of greater prominence in the text."). Nonetheless, "[a]s a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)). The party seeking information in discovery has the burden of showing its relevance. *See, e.g., Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)); *see also Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984). Conversely, "[w]hen a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (quoting

*Sánchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)); *see also Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1.

Where a litigant, like Plaintiff, is proceeding *pro se*, she is "entitled to some special considerations …. [but] the generosity afforded this status has reasonable limitations …." *Hinkle v. Gentry*, 529 F. Supp. 2d 281, 281 (D. Mass. 2008) (dismissing case due to *pro se* plaintiff's failure to meet his discovery obligations); *see also Malloy v. WM Specialty Mortg., LLC*, 512 F.3d 23, 26-28 (1st Cir. 2008) (affirming the district court's dismissal with prejudice based on the plaintiffs' failure to respond to the defendants' discovery requests).  A party who is self-represented "'must comply with the applicable procedural and substantive rules of law.'" *Aung v. Prettenhoffer*, 544 F. Supp. 3d 173, 188 (D. Mass. 2021) (quoting *Lefebvre v. Comm'r*, 830 F.2d 417, 419 (1st Cir. 1987)).  And notwithstanding Plaintiff's *pro se* status, "Defendants are entitled to know [the] factual bases underlying [her] numerous claims and the witnesses and documents that [she] relies on to substantiate those claims." *Taylor v. Woods*, 241 F.R.D. 421, 423 (D.R.I. 2006).

        B.    <u>Defendant's requests</u>

        1.    *General matters*

As an initial matter, the court addresses Plaintiff's arguments, among others, that she should not be required to produce copies of documents that SPS already has in its possession; that document production requests going back in time to 2011 are overly broad and unduly burdensome; that her state and federal tax returns are privileged; and that SPS has served more than the twenty-five interrogatories permitted under the provisions of Fed. R. Civ. P. 33(a)(1).

(i)     Documents already in SPS's possession

As to Plaintiff's first contention, "[c]ourts have held that a responding party is required to produce documents in [her] possession, custody, or control regardless of whether the requesting party is already in possession of the requested documents." *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 230 (D.P.R. 2016) (citing *Med. Protective Co. v. Am. Int'l Specialty Lines Ins. Co.*, Cause No. 1:13-CV-00357, 2014 WL 4979394, at *3 (N.D. Ind. Oct. 6, 2014); *Redding v. ProSight Specialty Mgmt. Co.*, CV 12-98-H-CCL, 2014 WL 11412743, at *2 (D. Mont. July 2, 2014); *Gomez v. Tyson Foods, Inc.*, No. 8:08CV21, 2012 WL 3111897, at *4 (D. Neb. July 31, 2012); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal 1996)).  Nonetheless, to minimize the burden on Plaintiff, SPS voluntarily agreed that, to the extent documents responsive to its document production requests consist of emails exchanged between SPS and Plaintiff that are in SPS's possession, Plaintiff may respond to SPS's document production requests by producing a list that identifies such responsive emails by date, time, and sender.[2]  This concession by SPS does not relieve Plaintiff from her obligation of producing to SPS all other documents in her possession, custody, or control responsive to its document production requests.

---

[2] The court does not understand Plaintiff's contention that SPS's document production requests concerning her retaliation claim would require her to produce the administrative record that has been filed with the court (Dkt. No. 87) in connection with Plaintiff's appeal of the first BSEA decision concerning services provided to her son (*Ollie I*).  The interrogatories and document production requests presently under review by the court seek material relevant to Plaintiff's claim that SPS retaliated against her for advocating for her son's right to be free from disability-based discrimination.  While some portion of the administrative record might be relevant to such a claim, it is unlikely that most of the administrative record of a proceeding aimed at resolving whether SPS provided Plaintiff's son with a FAPE would be relevant to Plaintiff's retaliation claim against SPS.

(ii)     Time limit

As to the time period covered by SPS's document production requests, only two of them include a temporal limitation.  Document request 5 seeks "[a]ll documents showing [Plaintiff's] income from any and all sources from January 1, 2011 to the present" (Dkt. No. 145-2 at 6). Document request 20 asks for "[a]ny statements, correspondence, emails, text messages, or the like, made by [Plaintiff] regarding SPS from 2011 to the present" (Dkt. No. 145-2 at 7). Otherwise, SPS's document production requests directed to Plaintiff are unrestricted as to time. In response to Plaintiff's concerns about the timeframe of its requests, SPS agreed to limit its request for financial information to the period from January 1, 2015, to the present.  The court finds that an appropriate time restriction should apply consistently to all of SPS's document production requests to Plaintiff.  According to Plaintiff's amended complaint, Plaintiff has a long history of disagreements with SPS (e.g., Dkt. No. 31 at 7).  It appears, however, that the events on which she bases her retaliation claim against SPS occurred in 2019 or thereafter.  "[R]elevant information, which is otherwise discoverable, may be limited both 'geographically' and 'temporally' to avoid overly broad and unduly burdensome requests." *Briddell v. Saint Gobain Abrasives, Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (citing *Glenn v. Williams*, 209 F.R.D. 279, 281-82 (D.D.C. 2002)).  Accordingly, at the February 7, 2024, case management conference, the court ruled that, with respect to all document requests with which Plaintiff is required to comply – and that is a majority of the document requests served on Plaintiff – the relevant time period is January 1, 2017, for financial information.  The same time limit will apply to all of SPS's document production requests to Plaintiff related to Plaintiff's retaliation claims against SPS.

(iii)     Tax returns

SPS's document request 12 seeks production of Plaintiff's state and federal tax returns from 2011 to the present.  Where, as in this case, the information in a plaintiff's tax returns is relevant to damages, personal state and federal tax returns are discoverable.  *See Amoah v. McKinney*, CIVIL ACTION NO. 4:14-40181-TSH, 2016 WL 1698267, at *4 (D. Mass. Apr. 27, 2016) (citing *Madrid v. Don Kelly Constr., Inc.*, No. 12 No. CIV 12-0451 JB/GBW, 2013 WL 1897826, at *11 (D.N.M. Apr. 24, 2013)).  The party resisting the disclosure of tax returns, here, Plaintiff, "'bears the burden of establishing alternative sources for the information.'"  *Elevate Grp., LLC v. DataScience.codes, LLC*, Civil Action No. 1:20-12084-PBS, 2021 WL 6108288, at *3 (D. Mass. Nov. 23, 2021) (quoting *Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 30, 32 (D. Mass. 1993)).  Consistent with these principles, SPS has expressed that it is willing to forego production of Plaintiff's tax returns as long as it receives adequate financial information from alternative sources.  At this time, the court will grant so much of Plaintiff's motion for a protective order as applies to her state and federal tax returns subject to her obligation to produce documents that are an adequate alternative source of financial information.  This aspect of the court's ruling is without prejudice to SPS filing a motion to compel production of Plaintiff's tax returns from January 1, 2017, to the present if Plaintiff does not provide adequate financial information from other sources.

(iv)     Interrogatories

Fed. R. Civ. P. 33(a)(1) provides, in pertinent part, that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."  Fed. R. Civ. P. 33(a)(1).  Service of

additional interrogatories may be appropriate when a case "involves a large number of claims and . . . separate sets of damages." *AcBel Polytech Inc. v. Fairchild Semiconductor Int'l, Inc.*, CIVIL ACTION NO. 13-13046-DJC, 2016 WL 10894661, at *3 (D. Mass. Feb. 4, 2016). Plaintiff objects that SPS has served more than twenty-five interrogatories on her. She represents that SPS served twelve interrogatories on her for purposes of addressing whether the time for Plaintiff to file an appeal from the *Ollie II* decision should be equitably tolled. SPS has not disputed this assertion. SPS served twenty-four interrogatories on Plaintiff concerning her retaliation claims (Dkt. No. 145-1). SPS requests permission *nunc pro tunc* to exceed the 25-interrogatory limit on the grounds that Plaintiff's retaliation claim is factually and legally distinct from the equitable tolling issue related to the *Ollie II* appeal and that SPS needs adequate discovery for claims that are not clearly laid out in the amended complaint but appear to be based on allegations involving many incidents and many individuals over an extended timeframe (Dkt. No. 144 at 9-10). For the following reasons, the court finds that SPS is entitled to exceed the 25-interrogatory limit for purposes of obtaining discovery about Plaintiff's retaliation claim.

As this court has already noted, Plaintiff's amended complaint asserts disparate claims joined in a single suit. The factual circumstances on which these claims depend differ significantly. Even more importantly, as this court noted in its March 3, 2023, report and recommendation addressing some of the defendants' motions to dismiss, the amended complaint "does not coherently describe the events relevant to this action" (Dkt. No. 68 at 3). This lack of clarity left this court "unable to provide a chronology of events" for the presiding District Judge's review (Dkt. No. 68 at 3). SPS's interrogatories 2 through 12 and 22 seek information about the factual basis for Plaintiff's claims (Dkt. No. 145-1 at 4-5). These interrogatories are appropriately focused, and none appears superfluous. Because the bases of Plaintiff's claim are

exceedingly difficult to ascertain from the amended complaint, SPS must rely on discovery to obtain information about the factual bases for Plaintiff's claim so that it is able to defend itself in this case.  The interrogatories it has propounded seeking information about the factual bases of Plaintiff's claims – interrogatories 2 through 12 and 22 – are a necessary and appropriate way for it to seek information to which it is entitled.

Plaintiff's amended complaint seeks damages in excess of $6.7 million from SPS along with declaratory relief (Dkt. No. 31 at 35-36).  SPS's interrogatories 13 through 19 and 21 are directed to establishing the basis and extent of Plaintiff's alleged losses and damages.  It is well-settled that SPS is entitled to discovery that will enable it to understand the basis of Plaintiff's alleged losses and damages and develop defenses to those claimed losses.  *See generally Driscoll v. McCann*, Civil Action No. 19-cv-12302-ADB, 2020 WL 5983272, at *5 (D. Mass. Oct. 8, 2020) (permitting the defendant to exceed the twenty-five interrogatory limit in Fed. R. Civ. P. 33(a) for purposes of obtaining financial information from the plaintiffs).  Nevertheless, while the subject matter of Plaintiff's finances is an appropriate area of discovery, SPS might be able to forego several of these interrogatories and still obtain the information it seeks about the extent of Plaintiff's alleged losses and damages.

The three remaining interrogatories are standard inquiries:  they ask Plaintiff to identify herself (number 1) and anyone who assisted her in answering the interrogatories (number 24) and to identify prior legal proceedings to which she was a party (number 20).  While these are appropriate areas of inquiry, they may not be essential for SPS to prepare its defense in this case.

This written decision explains the basis for the court ruling at the February 7, 2024, hearing that SPS would be entitled to serve twenty interrogatories on Plaintiff related to her retaliation claim.  The court leaves to SPS the decision as to how to reformulate its

interrogatories to bring them within this limit, which must be served on Plaintiff by no later than ten business days from the date of this order, and after which Plaintiff will have forty-five days to serve her responses thereto.

2.  *Rulings on Plaintiff's objections to specific document production requests*

Plaintiff's motion for a protective order sets out her objections to SPS's document production requests. Rather than moving to compel Plaintiff to satisfy her discovery obligations, SPS has opposed Plaintiff's motion for a protective order. For the most part, SPS's argument is set out in general terms and does not address Plaintiff's objections to specific document requests. The court does not find this approach helpful. Plaintiff is entitled to understand her obligations in discovery. Accordingly, the court's rulings on SPS's document requests and Plaintiff's objections thereto are set forth below.

(i)  SPS's document production requests 1-3, 7, and 11

SPS's document requests numbers 1 and 2 direct Plaintiff to produce all documents concerning Plaintiff's claims that SPS retaliated against her for engaging in protected activity. Document request 3 directs her to produce all documents concerning communications between herself and SPS regarding the allegations in her complaint (Dkt. No. 141 at 3). Document request 7 requests production of documents that relate to legal matters referred to in the complaint to the extent such documents are not protected by the attorney-client privilege (Dkt. No. 141 at 4). Document request 11 seeks the production of documents, not otherwise requested, that were a source of information for Plaintiff's answers to interrogatories (Dkt. No. 141 at 5). Plaintiff objects to these requests on the basis that they are unduly burdensome mainly because SPS already has these documents, or, as to request 11, that she is not required to produce these documents based on work product protection. The court has already addressed Plaintiff's claim

11

that she should not be required to produce documents that are in SPS's possession, SPS's concession on this point regarding emails exchanged between SPS and Plaintiff that are in SPS's possession, and Plaintiff's obligation to produce any additional documents in her possession, custody, or control that are responsive to these requests. As to Plaintiff's claim of work product production, "[t]he 'party asserting the … work product privilege,' plaintiff, 'bears the burden of showing that the privilege applies.'" *Lobel v. Woodland Golf Club of Auburndale*, CIVIL ACTION NO. 15-13803-FDS, 2016 WL 7410776, at *1 (D. Mass. Dec. 22, 2016) (quoting *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012); additional citations omitted). Plaintiff has not shown that the work product doctrine would apply to protect her against responding to this standard document production request. The court has stated that Plaintiff's production obligation only encompasses documents from January 1, 2017, to the present. In all other respects, the court denies Plaintiff's request for a protective order as to these five requests. Plaintiff must produce responsive documents to the extent set forth herein.

(ii)    SPS's document request 4

This request seeks production of all documents filed by Plaintiff with the MCAD or the EEOC. Plaintiff objects that SPS has these documents and that they are somehow privileged or confidential (Dkt. No. 141 at 4). The request is not unduly burdensome. SPS may not have all of the documents that Plaintiff filed with or provided to the MCAD and the EEOC. By their nature, the documents are likely to include statements by Plaintiff (or others) about alleged discrimination and retaliation. Plaintiff's claims have been somewhat of a moving target. Documents filed with the MCAD or the EEOC may be relevant on the question of whether Plaintiff exhausted her administrative remedies. Plaintiff provided these documents to third parties (the MCAD and the EEOC) for purposes of legal proceedings. She has not pointed to any

case law holding that these documents are privileged, and the court is aware of none. *Cf. Hwang*

*v. Wentworth Inst. of Tech.*, C.A. No. 11-12042-MLW, 2013 WL 1414888, at *4 (D. Mass. Apr.

5, 2013) (directing the *pro se* plaintiff to produce copies of all documents supporting her claim

that she filed charges with the EEOC, as well as all documents pertinent to that filing and its

disposition). The court denies Plaintiff's motion for a protective order as to these documents,

which Plaintiff must produce without regard to whether the documents are already in SPS's

possession. *See, e.g., P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230.

(iii)     SPS's document requests 5, 13, 18, and 21

SPS's document request 5 seeks production of documents showing Plaintiff's income

from all sources (Dkt. No. 141 at 4). Document request 13 seeks documents related to Plaintiff's

attempt to obtain employment in any role (Dkt. No. 141 at 5). Document request 18 seeks

documents concerning damages allegedly caused by SPS (Dkt. No. 141 at 6).[3] Document

request 21 seeks copies of all accounting or bookkeeping ledgers for any business maintained by

Plaintiff that she alleges were affected by SPS (Dkt. No. 141 at 6). She objects that all of this

information is "outside the scope of the issues and confidential," not likely to lead to the

discovery of admissible evidence, privileged, or protected by work product (Dkt. No. 141 at 4-6).

Plaintiff is wrong. She is claiming a loss of business and a resulting loss of income and seeking

other damages as a result of SPS's actions. Therefore, SPS is entitled to information about

Plaintiff's earnings so that it can understand and test her claims and allegations about damages

and assess any attempts by her to mitigate claimed damages. As is set forth above, to the extent

Plaintiff does not produce documents responsive to requests for information concerning alleged

---

[3] SPS's document request 18 requests "[a]ll documents concerning any *damage* alleged by you to
have been caused by SPS" (Dkt. No. 145 -2 at 7) (emphasis added). The court assumes that SPS
intended to request documents concerning any *damages* allegedly caused by SPS.

financial losses, she may be required to produce federal and state tax returns as a source of the requested information. *See, e.g., Viscito v. Nat'l Planning Corp.*, Civil Case No. 3:18-30132-MGM, 2019 WL 5318228, at *7 (D. Mass. Oct. 21, 2019) (holding that the plaintiff was required to produce all documents relating to his claims for damages). The court denies Plaintiff's motion for a protective order as to documents which show her income, any attempts to seek employment, alleged damages, and financial records for her business. The court has limited the time period for these requests to the period from January 1, 2017, to the present.

   (iv) SPS's document request 8

  SPS's document request 8 seeks production of all documents (excluding privileged documents) concerning any discrimination or retaliation cases – other than the instant case – that Plaintiff has brought against any state, municipality, or organization, including SPS (Dkt. No. 141 at 4). Plaintiff objects on grounds of relevance. SPS did not address Plaintiff's objection to this request or point to any authority holding that such documents are likely to be relevant and therefore discoverable. In other words, on this record, SPS has not met its burden of showing that document request 8 seeks relevant information. *See, e.g., Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1. This aspect of Plaintiff's motion for a protective order will be allowed. Plaintiff is not required to produce documents responsive to SPS's document request 8.

   (v) SPS's document request 16

  SPS's document request 16 seeks copies of all communications with any of Plaintiff's clients that might support her allegation that her relationship with the client was harmed by any action or inaction of SPS, to which Plaintiff objects on the ground that the court has "ruled [her] clients are confidential, privileged" (Dkt. No. 141 at 5). The court has not so ruled. The information requested by this document request is critical to Plaintiff's claim because she has

alleged that SPS's retaliation against her consisted of SPS personnel approaching families for whom she was acting as an education advocate, telling them not to work with her, and making false allegations about her to them, thereby harming her livelihood (Dkt. No. 68 at 22-23).  The court acknowledges that Plaintiff is asserting a privacy concern on behalf of parents and students involved in the IEP process in Springfield.  But, to succeed on her claims, Plaintiff will be required to prove her allegation of adverse action by, among other things, evidence showing that such alleged retaliatory acts occurred.  Thus, by her amended complaint, she has brought these alleged interactions into this controversy.  SPS cannot prepare a defense or assess possible settlement without information about the alleged adverse actions on which Plaintiff's claim is based.  In similar circumstances, courts have required disclosure of confidential information, including educational information, about third parties.  *See, e.g., Smith v. Brown Univ.*, Case No.: 1:22-cv-329-JJM-PAS, 2023 WL 6314646, at *1-2 (D.R.I. Sept. 28, 2023) (requiring Brown University to disclose educational records of comparator students in response to the plaintiff's discovery requests in a Title IX case).

For this reason, the court finds that Plaintiff is required to produce information responsive to SPS's document request 16.  At this time, she may (and should) redact, or cover up, the names of parents and children of the families for whom she was acting as an educational advocate and whom she alleges were involved in SPS's retaliation against her.  If SPS objects to redactions, it must propose a solution that protects to the extent possible the identities of third parties who are alleged by Plaintiff to have been involved in or witnessed acts of retaliation against her.

       (vi)    SPS's document request 9

SPS's document request 9 seeks production of Plaintiff's mental health treatment and counseling records (Dkt. No. 141 at 4-5).  Plaintiff objects to producing the records on grounds

of privilege, noting that she is in active treatment.  Federal law recognizes a privilege protecting the confidentiality of mental health counseling records.  *See generally Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).  When such records are requested in discovery, the question is whether the plaintiff has waived that privilege by bringing suit.  *See Booker v. City of Boston*, Nos. 97-CV-12534-MEL, 97-CV-12675-MEL, 1999 WL 734644, at *1 (D. Mass. Sept. 10, 1999).  In *Booker*, the court adopted an approach that is protective of the privilege, holding that it is waived only when a party indicates the intent to make "positive use of the privileged material."  *Id.*  The court went on to note that the privilege established in *Jaffee* applies only to "'communications' between the plaintiff-patient and her therapist and the records of such communications."  *Id.*  "Other courts, including a number of judges in this district, have applied th[is] so-called 'narrow' approach to waiver."  *Silvestri v. Smith*, CIVIL ACTION NO. 14-13137-FDS, 2016 WL 778358, at *3 (D. Mass. Feb. 26, 2016) (citing *St. John v. Napolitano*, 274 F.R.D. 12, 18 (D.D.C. 2011)).  "The defendant[] remain[s] free to question the plaintiff[] about the fact of psychotherapy treatment even [where] the records of those communications between the plaintiff[ ] and the[ ] therapists are privileged."  *Booker*, 1999 WL 734644, at *1.  Plaintiff has not indicated an intention to make a positive use of her counseling records in this litigation.  Unless this changes, Plaintiff will not be required to produce counseling records or testify to her communications with a mental health counselor.  *See id.*  Thus, this aspect of Plaintiff's motion for a protective order is granted.

> (vi)  Other documents

SPS also requested the production of medical records in connection with Plaintiff's retaliation claims (Dkt. No. 141 at 4).  SPS previously requested medical records for purposes of addressing whether the time for filing an appeal from the *Ollie II* decision should be tolled.

Plaintiff signed releases to enable SPS to obtain those records, and, in the absence of a timely objection from Plaintiff, the court granted SPS's motion for an order directing the production of medical records (Dkt. No. 166, 167). So far as the court is aware, there is no live dispute between the parties concerning production of Plaintiff's medical records.

SPS requested that Plaintiff produce the curriculum vitae of any individual she intends to call as an expert at trial (document request 10) and copies of the documents she intends to rely on as exhibits at trial (document request 22) (Dkt. No. 145-2 at 5, 6). Plaintiff objected to document request 10 on the ground that she has not yet decided who she will call at trial (Dkt. No. 141 at 5). She objected to document request 22 on the grounds of work product protection and that she has not yet identified the documents on which she will rely at trial (Dkt. No. 141 at 6). The court sees no reason to address these requests now. To the extent the parties indicate they expect to rely on experts, the court will set a schedule for the disclosures required by Fed. R. Civ. P. 26(a)(2)(B), which requires production of an expert report that includes information about a proposed expert witness's qualifications. Further, Fed. R. Civ. P. 26(a)(3) requires parties to make pretrial disclosures, including identifying documents it intends to offer at trial. *See* Fed. R. Civ. P. 26(a)(3)(A)(iii). If Plaintiff fails to make the required disclosures, SPS may have a basis to move for their exclusion at trial. *See* Fed. R. Civ. P. 37(c).

      C.    <u>Extension of Time</u>

SPS served discovery on Plaintiff on August 15, 2023, more than six months ago. Most of Plaintiff's objections to producing documents were without merit. She did not comply with her obligation to attempt to reach a reasonable compromise with SPS as to the number of interrogatories served on her before filing the motion for a protective order. *See* Fed. R. Civ. P. 26(c)(1). The court had to order her to comply with her discovery obligations with respect to the

17

*Ollie II* appeal (Dkt. No. 131).  During this time, she has made numerous other filings.  The court

will not set timelines other than those contained in the applicable rules for Plaintiff to respond to

discovery requests.  Such extensions are normally negotiated between parties.  As to Plaintiff's

obligations to respond to SPS's discovery requests as set forth herein, she must serve her answers

to interrogatories and document production responses within forty-five days of the date on which

this order is docketed.

      V.     **Conclusion**

      For the foregoing reasons, Plaintiff's Motion for Protective Order, Motion for Extention

[sic] of Time on Other Requests, and Oder [sic] for Defendat's [sic] to Comply with the Limit of

25 Interrogatories is granted in part and denied in part as is set forth herein.

It is so ordered.                        <u>Katherine A. Robertson</u>
                                           KATHERINE A. ROBERTSON
                                           U.S. MAGISTRATE JUDGE

DATED:  March 13, 2024