UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KELLY LaROE,                          )
                                      )
          Plaintiff,                  )
v.                                    )
                                      )
COMMONWEALTH OF                       )
MASSACHUSETTS                         )          Case No. 3:21-cv-30020-MGM
DIVISION OF LAW APPEALS               )
BSEA and SPRINGFIELD                  )
PUBLIC SCHOOLS,                       )
                                      )
          Defendants.                 )

**MEMORANDUM & ORDER ON BSEA'S MOTION TO COMPEL PLAINTIFF TO
ANSWER RELEVANT DEPOSITION QUESTIONS AND DEFENDANT,
SPRINGFIELD PUBLIC SCHOOLS' MOTION TO COMPEL PLAINTIFF'S
DEPOSITION**
(Dkt. Nos. 222, 225)

Relevant to the instant motions, Plaintiff brings this action against Springfield Public

Schools ("SPS") and the Bureau of Special Education Appeals ("BSEA" and, together with SPS,

"Defendants") seeking judicial review pursuant to the Individuals with Disabilities Education

Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, of a BSEA decision, referred to herein as *Ollie II*,

related to special education services the City of Springfield provided to her son.  The court

denied Defendants' motion to dismiss Plaintiff's late-filed appeal of *Ollie II* for the parties to

develop an adequate factual record to resolve the question of whether Plaintiff can rely on the

doctrine of equitable tolling to pursue her untimely claim (i.e., whether her alleged physical

medical condition was sufficiently severe to prevent her from timely filing the appeal).  The

instant motions, to which Plaintiff has filed no opposition(s), relate to Defendants' efforts to

depose Plaintiff on the issue of equitable tolling (Dkt. Nos. 222, 225).  For the following reasons,

the motions are GRANTED.

## I.     Procedural History

On March 27, 2023, the court denied Defendants' motions to dismiss Plaintiff's untimely appeal of the BSEA's March 18, 2021, decision in *Ollie II* to allow the parties the opportunity to develop an adequate factual record on which it could determine whether Plaintiff's alleged illnesses, identified at the time as complications from diabetes and venous insufficiency, entitled her to equitable tolling of the 90-day appeal deadline (Dkt. No. 79 at 3-5; *see also* Dkt. No. 68 at 5-14).  In the interests of addressing the comparatively limited issue of whether Plaintiff was entitled to the protection of the equitable tolling doctrine as to the *Ollie II* appeal in the context of Plaintiff's sprawling complaint, the court set separate discovery deadlines, including a September 15, 2023 deadline for Defendants to take a deposition of Plaintiff "limited to eliciting evidence relevant to the issue of equitable tolling as it pertains to the timeliness of *Ollie II*" (Dkt. No. 105 at 2).  After this court ordered Plaintiff to answer Defendants' interrogatories, Plaintiff identified eight conditions that allegedly prevented her from filing the appeal in a timely manner, including the originally identified complications from diabetes and venous insufficiency, as well as agoraphobia, plantar fasciitis, depression, public anxiety, physical disabilities, and bone spurs (Dkt. No. 227-2 at 2).  On November 8, 2024, Plaintiff appeared remotely for deposition by SPS and BSEA on the issue of equitable tolling (Dkt. No. 224-4).  After nearly an hour had elapsed, all parties agreed to suspend the deposition for Defendants to seek a court order compelling Plaintiff to provide substantive responses to their deposition questions (Dkt. No. 224-4).

## II.     Applicable Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Pursuant to Rule 30(c)(2), objections during a deposition by oral examination are to be noted on

the record, but the examination is supposed to proceed. Fed. R. Civ. P. 30(c)(2). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[1] Fed. R. Civ. P. 30(c)(2). "A question's lack of relevance or immateriality is not a proper basis to refuse to answer the question." *Barth v. City of Peabody*, Civil Action No. 15-13794-MBB, 2019 WL 2525475, at *4 (D. Mass. June 19, 2019) (citing *Southgate v. Vt. Mut. Ins. Co.*, No. CA 06-500 ML, 2007 WL 1813547, at *5 (D.R.I. June 21, 2007)). "This rule applies equally to *pro se* litigants." *Id.* (citing *Anderson v. Furst*, No. 2:17-12676, 2019 WL 2284731, at *6 (E.D. Mich. May 29, 2019)).

Where a deponent fails to answer a question or provides an evasive or incomplete answer, a party may file a motion to compel, either after adjourning or otherwise completing the deposition. Fed. R. Civ. P. 37 (a)(1), (a)(3)(B)(i), (a)(4). "If the motion is granted … the court must … require the party … whose conduct necessitated the motion … to pay the movant's reasonable expenses in making the motion, including attorney's fees, … [unless]: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure … was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is granted in part and denied in part, the court may apportion reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). Finally, "[i]f the motion is denied, the court … must … require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees …

---

[1] A Rule 30(d)(3) motion seeks to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3).

[unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

### III.    Discussion

Review of the transcript of the suspended November 8, 2024, deposition of Plaintiff reveals that Plaintiff's conduct was obstructive, hostile, and in violation of the Rules of Civil Procedure. Plaintiff declined to answer questions that she viewed as irrelevant or "outside of the scope," which, in her view, consisted of questions about anything outside the three-month period following the *Ollie II* decision (i.e., from March 18, 2021, to June 16, 2021) (Dkt. No. 224-4 at 4). Most significantly, Plaintiff's refusal to answer extended to questions relating to the eight physical and mental health conditions that she identified in her answers to interrogatories as the basis for her claim to equitable tolling, other than what she was specifically experiencing vis a vis those conditions during the tolling period (Dkt. No. 224-4 at 42). In other words, Plaintiff would not answer questions about the symptoms of her alleged conditions or how or to what extent they impeded her in any way before March 18, 2021, or after June 16, 2021. In addition, Plaintiff testified that she was unable to answer certain questions without reviewing her files, or her "memory aids," including providing all the reasons why she maintained in her interrogatory response that she pursued her rights diligently during the 90-day tolling period (Dkt. No. 224-4 at 6). As a result, Plaintiff's testimony as to the basis for her position that she pursued her rights to the best of her ability was "[b]ecause it's what happened" (Dkt. No. 224-4 at 7). Yet, when SPS's counsel inquired about Plaintiff's position on producing her "memory aids," Plaintiff accused him of discriminating against her based on a disability that allegedly prevents her from remembering things (Dkt. No. 224-4 at 7). She also accused him, without any basis in the record, of trying to confuse her and to misconstrue her testimony. Plaintiff also refused on

4

relevance grounds to answer questions about the extent she was employed during the claimed tolling period. Whether Plaintiff worked, and the nature and extent of that work, if any, during the three months she had to file her appeal in *Ollie II* is, of course, directly relevant to the question of whether she was experiencing physical or mental limitations that prevented her from timely filing the *Ollie II* appeal.

As set forth above, Plaintiff's position that SPS's questions relating to any time outside the tolling period are "outside the scope" and, therefore, irrelevant, is not a permissible basis on which to refuse to answer the questions. Plaintiff's evasive answers are likewise treated as a failure to answer under the rules. Even if relevance were an acceptable ground on which to refuse to respond, which it is not, Plaintiff is incorrect that only questions relating to the 90-day period following the *Ollie II* decision are relevant. As noted by SPS's counsel, Plaintiff timely filed an appeal of an earlier BSEA decision in *Ollie I* and has actively engaged in litigation since the deadline for appealing *Ollie II* passed. Defendants are entitled to inquire into Plaintiff's alleged medical conditions before, during, and after the 90-day period to understand and test the veracity of her claim that her health conditions prevented her from timely filing the *Ollie II* appeal. This means that Defendants may ask Plaintiff how she was affected by her alleged conditions before, during, and after the tolling period, including asking questions about the nature and extent of her symptoms and any limitations on her functional abilities, including - but not limited to – her ability to engage in litigation and in work-related activities.

In light of Plaintiff's conduct, SPS seeks an order requiring Plaintiff to sit for a continued deposition on the topics of her answers to interrogatories and all other reasons Plaintiff claims extraordinary circumstances prevented her from filing the *Ollie II* appeal in a timely manner, whether or not the question seeks information outside the 90-day appeal period in *Ollie II*; to

familiarize herself with the rules regarding deposition conduct, including the requirements of Fed. R. Civ. P. 30, and to comply with those requirements; and to wait until counsel finishes asking a question before attempting to answer.  Looking forward, SPS also asks this court to consider sanctions under Fed. R. Civ. P. 37 if Plaintiff engages in improper conduct in violation of the order it seeks, including dismissal of Plaintiff's claim for review of *Ollie II*.  BSEA, for its part, seeks an order extending the deadline for the close of discovery for *Ollie II*, with an equivalent extension of the subsequent deadlines; requiring Plaintiff to sit for a single deposition on or before January 31, 2025, during which SPS and BSEA may ask questions that they deem, in good faith, to be relevant to the issue of equitable tolling; and requiring Plaintiff to make concise, non-argumentative objections only to questions that she has a good faith belief are objectionable, but if the attorney insists on the question being answered, Plaintiff must provide a substantive answer or suspend the deposition and seek a protective order within 7 days, and the court will consider such failure as grounds for dismissal of Plaintiff's claim for judicial review of *Ollie II*.  As a result of Plaintiff's conduct during the November 8, 2024, deposition and in the absence of any timely opposition from Plaintiff to Defendants' motions, Defendants are entitled to the relief they seek.

## IV.    Conclusion

For the foregoing reasons, BSEA's and SPS's motions are GRANTED, and the court orders as follows:

Plaintiff must sit for a single deposition of up to six hours to be taken by no later than February 21, 2025, for which Plaintiff must prepare herself to answer questions posed by counsel for SPS and BSEA, on the topics of her answers to interrogatories and all the reasons Plaintiff claims extraordinary circumstances prevented her from filing the *Ollie II* appeal in a timely

manner, whether or not the question seeks information outside the 90-day appeal period following the *Ollie II* decision. The parties are to advise the court in advance of the date the deposition is to take place. While Plaintiff may make objections to questions, she may not refuse to answer any question unless necessary to preserve a privilege or to present a motion under Rule 30(d)(3). Plaintiff may not refuse to answer any question on relevance or "scope" grounds. Plaintiff must wait until counsel has finished a question before attempting to answer or otherwise respond to it. If Plaintiff refuses to answer any question posed to her during the deposition, she must move for a protective order within seven calendar days. Plaintiff is advised that should she fail to provide information in response to deposition questions without substantial justification, she may be precluded from using that information on a motion or opposition, at a hearing, or at trial, and may face additional sanctions, up to and including dismissal of her appeal of *Ollie II*. Fed. R. Civ. P. 37(b)(2)(A), (c)(1). In light of Plaintiff's *pro se* status and because the scope of an appropriate examination might not be apparent to a self-represented litigant, an award of expenses pursuant to Fed. R. Civ. P. 37(a)(5) would be unjust at this time. However, Plaintiff is advised that if the Defendants renew their motions or again move to compel deposition testimony based on her failure to cooperate and the court deems the motion or motions warranted, this court may well award fees and costs or impose some other sanction. An amended scheduling order will issue separately.

/s/ Katherine A. Robertson_____
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: January 21, 2025