UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLY LaROE, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS | )   Case No. 3:21-cv-30020-MGM |
| DIVISION OF LAW APPEALS | ) |
| BSEA and SPRINGFIELD | ) |
| PUBLIC SCHOOLS, | ) |
| | ) |
|     Defendants. | ) |

**REPORT & RECOMMENDATION ON SPRINGFIELD PUBLIC SCHOOLS'
MOTION FOR SUMMARY JUDGMENT ON *OLLIE II* AND BSEA'S MOTION FOR
SUMMARY JUDGMENT ON THE ISSUE OF EQUITABLE TOLLING IN *OLLIE II***
(Dkt. Nos. 254, 258)

This Report & Recommendation concerns the claim brought by Plaintiff Kelly LaRoe ("Plaintiff") seeking judicial review pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, of a March 18, 2021, Bureau of Special Education Appeals ("BSEA") decision (referred to herein as "*Ollie II*") related to special education services the City of Springfield provided to Plaintiff's son. Presently before me on referral for report and recommendation (Dkt. Nos. 213, 271) are Springfield Public Schools's ("SPS") and BSEA's motions for summary judgment on the issue of Plaintiff's entitlement to equitable tolling of the deadline to appeal *Ollie II* (Dkt. Nos. 254, 258). Having carefully considered the motions and all memoranda filed by the parties in support or against them, I recommend that the court GRANT both motions and DISMISS so much of Plaintiff's amended complaint (Dkt. No. 31) as asserts an appeal of *Ollie II*.

1

## I. Procedural History

Plaintiff does not dispute that she failed to meet the 90-day deadline for appealing *Ollie II*. *See* 20 U.S.C. § 1415(i)(2)(B) ("The party [aggrieved by the findings and decision] bringing the [civil] action shall have 90 days from the date of the decision of the hearing officer to bring such action ...."). Defendants sought dismissal of Plaintiff's claim on this basis in their motion to dismiss Plaintiff's amended complaint, but the court denied this aspect of the motion to allow the parties to engage in discovery and develop a factual record on which to determine whether Plaintiff is entitled to equitable tolling of the deadline based on her claimed ill health (Dkt. No. 79). SPS and BSEA now seek a ruling on summary judgment that Plaintiff is not entitled to equitable tolling (Dkt. Nos. 254, 258).

SPS and BSEA each submitted statements of material facts of record as to which each contend there is no genuine issue to be tried, as required by L.R., D. Mass. 56.1 (Dkt. Nos. 256, 260). Plaintiff failed to file the required counter statement of material facts of record as to which she contends there exists a genuine issue to be tried. Therefore, consistent with the rule, SPS's and BSEA's material facts of record set forth in their statements are deemed admitted. *See* L.R., D. Mass. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party shall be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties.").

## II. Facts[1]

---

[1] Plaintiff's motion seeking exclusion of her deposition (Dkt. No. 265) is filed in connection with her opposition to SPS's motion for dismissal of her remaining claims based on her failure to participate in discovery (Dkt. No. 262). To the extent Plaintiff's motion to exclude her deposition testimony has any bearing on the court's disposition of SPS's and BSEA's motions for summary judgment on Plaintiff's *Ollie II* appeal, the presiding District Judge considered and rejected Plaintiff's contentions in his ruling at docket entry 251.

The 90-day limitations period for appealing the BSEA's decision in *Ollie II* was set forth in the decision, and Plaintiff was aware of it (Dkt. Nos. 256 at ¶ 1; 260 at ¶¶ 46-47). Plaintiff had until June 16, 2021, to seek judicial review of the March 18, 2021, decision (Dkt. No. 260 at ¶¶ 1-2). Plaintiff did not file an appeal within the 90-day period; instead, over two months later, on August 19, 2021, Plaintiff filed a motion to consolidate an appeal of *Ollie II* into her existing appeal of an earlier BSEA decision or to allow her to file a late appeal of *Ollie II* (Dkt. Nos. 24; 260 at ¶¶ 2-3). The court interpreted Plaintiff's motion as a request to file an amended complaint and allowed it; Plaintiff filed her amended complaint on September 24, 2021, seeking, *inter alia*, judicial review of *Ollie II* (Dkt. Nos. 27; 260 at ¶¶ 3, 5).

Plaintiff relies on the following physical and mental health conditions to justify her admittedly tardy filing: agoraphobia, venous insufficiency, plantar fasciitis, depression, phobic anxiety, bone spurs, diabetic complications, and systemic amnesia (Dkt. Nos 256 at ¶¶ 19, 26, 31, 34-36, 38-41; 260 at ¶¶ 6, 8). According to Plaintiff, her myriad physical conditions prevented her from "walking sufficiently to get to the courthouse and file" the appeal of *Ollie II* in a timely fashion (Dkt. Nos. 256 at ¶ 35, 39-40; 260 at ¶¶ 9-14, 17). Plaintiff testified to her belief, based on communications with her doctor, that the venous insufficiency, which caused a tremendous amount of swelling in her lower extremities, led to the plantar fasciitis and bone spurs. Collectively, the conditions caused her "unbearable" pain (Dkt. No. 257-2 at 11, 18-19). Plaintiff attributed the difficulty in getting over all these conditions to what turned out to be her undiagnosed diabetes (Dkt. No. 257-2 at 21). Plaintiff testified that her mental health conditions caused her to be fearful of going anywhere given her reduced physical condition and rendered her unable to protect herself if she did (Dkt. Nos. 256 at ¶ 19; 260 at ¶¶ 20, 22-23).

Notwithstanding her medical conditions, Plaintiff drove to and presented herself for a medical appointment in May 2021. Plaintiff claimed at her deposition that the doctor's office involved only a "very short walk" without stairs, where there were rails and walls she could hold onto to balance herself and medical personnel to help her if she fell (Dkt. Nos. 256 at ¶ 5, 20, 33; 260 at ¶¶ 15, 18, 35). At the appointment, Plaintiff reported her pain as a six out of ten and was administered a cortisone shot that she says treated her plantar fasciitis but not her bone spurs or venous insufficiency (Dkt. Nos. 256 at ¶¶ 22, 27, 31; 260 at ¶¶ 14-15). According to a record of a telehealth visit the following month, the cortisone injection improved her pain "tremendously" (Dkt. No. 256 at ¶ 32). Also during the relevant timeframe, Plaintiff went up and down the stairs in her home once per day, and she was able to bring delivered groceries and other necessities into her home if they were "very light" (Dkt. No. 260 at ¶¶ 36-37).

Plaintiff testified that she checked the court's website regarding accessibility (Dkt. No. 260 at ¶ 38). She could not recall whether she called to inquire whether the courthouse was handicap accessible, but she did not believe that it was (Dkt. No. 260 at ¶ 38). Contrary to Plaintiff's professed belief, the courthouse has a handicap accessible ramp to the entrance (Dkt. No. 260 at ¶ 43).

Neither Plaintiff's physical nor mental conditions prevented her from using a computer during the appeal period (Dkt. No. 260 at ¶ 26). Indeed, Plaintiff engaged in email correspondence with the BSEA on 13 days and performed her work as a special education advocate throughout the relevant timeframe. Plaintiff's professional work during the time entailed reviewing Individualized Education Programs ("IEPs"), virtually attending and advocating for parents and children at IEP meetings, communicating regarding IEPs, and virtually meeting with parents (Dkt. Nos. 256 at ¶¶ 45-46, 48; 260 at ¶ 41). Plaintiff virtually

attended over 30 IEP meetings between March and June 2021, during which she "absolutely" had a speaking role and "effectively advocat[ed] for her clients," which took "a level of thought and preparation" (Dkt. Nos. 256 at ¶ 47; 260 at ¶ 41).  In addition, Plaintiff filed an action in the Massachusetts Commission Against Discrimination ("MCAD") on June 1, 2021 (Dkt. Nos. 256 at ¶ 49; 260 at ¶ 42).

Plaintiff acknowledged that she would have been capable of mailing her appeal of *Ollie II* or electronically filing it, but she maintains she was unaware that filing by mail was permitted or that she could request access to electronic filing (Dkt. Nos. 256 at ¶¶ 7, 9, 260 at ¶¶ 27-28). Plaintiff testified that she was told she had to file in person, but she was unable to recall who told her that (Dkt. No. 256 at ¶ 4).  Nor did Plaintiff seek help from others in attempting to file her *Ollie II* appeal in person, including her father, mother, three siblings, or adult son who lived with her (Dkt. Nos 256 at ¶¶ 12-13, . 260 at ¶¶ 30-34).  She offered various justifications for this including that her father had cancer, her mother did not drive, COVID-19 concerns kept her from being in contact with her siblings, one of her siblings had to care for their sick father, another sibling had to care for her children and worked during court hours as a teacher for SPS, the final sibling did not drive and had an undisclosed disability, and her son had autism, did not drive, and had school and work conflicts during court hours (Dkt. Nos. 256 at ¶¶ 14-16, 260 at ¶¶ 30-31, 34).

### III.   Applicable Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction." *Mu v. Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018)

5

(citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome. *Id*. (citing *Borges*, 605 F.3d at 5). A party seeking summary judgment is responsible for identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 325). If the moving party meets its burden, "[t]he non-moving party bears the burden of placing at least one material fact into dispute." *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)). Although pleadings of self-represented litigants are liberally construed and held to less stringent standards than those of lawyers, "*pro se* plaintiffs must comply with the specificity requirements of Fed. R. Civ. P. 56." *Karimpour v. Stanley Black & Decker, Inc.*, 749 F. Supp. 3d 203, 207 (D. Mass. 2024) (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 300, 401 (1st Cir. 1988)), *appeal filed*, No. 25-1511 (1st Cir. May 27, 2025).

**IV.     Discussion**

"It is '[o]nly in exceptional circumstances' that equitable tolling will extend a filing deadline." *Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 10 (1st Cir. 2014) (quoting *Farris v. Shinseki*, 660 F.3d 557, 563 (1st Cir. 2011)). "The 'heavy burden' of establishing entitlement to equitable tolling rests on the plaintiff." *Vázquez–Rivera v. Figueroa*, 759 F.3d 44,

50 (1st Cir. 2014) (quoting *Farris*, 660 F.3d at 563). Plaintiff relies on both mental and physical illness to support equitable tolling of the *Ollie II* appeal deadline. As to the former, the First Circuit has recognized that "mental illness may toll the time to file an administrative claim of discrimination, but only if the plaintiff has 'show[n] that the mental disability was so severe that the plaintiff was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel."'" *Bartlett*, 749 F.3d at 12 (quoting *Meléndez–Arroyo v. Cutler–Hammer de P.R. Co., Inc.*, 273 F.3d 30, 37 (1st Cir. 2001)).

  Plaintiff's claimed mental disabilities include agoraphobia, depression, phobic anxiety, and amnesia. It is uncontroverted, however, that throughout the appeal period Plaintiff continued to perform her diverse duties as a special education advocate, which, she represented in no uncertain terms, took thought and preparation of which she was fully capable. In addition, she engaged in email correspondence with the BSEA and filed an MCAD complaint. Thus, nothing in the record creates a triable issue as to whether Plaintiff's mental disabilities, alone or in tandem, prevented her from engaging in rational thought or deliberate decision-making. To the contrary, it establishes that she was able to do so. Plaintiff has failed to meet her burden of showing an entitlement to equitable tolling of the appeal deadline based on her mental conditions. *See Vazquez-Rivera*, 759 F.3d at 50-51 ("[A]pellant's claims of severe mental illness, unaccompanied by so much as the suggestion that the illness rendered the appellant unable to understand or act on his legal rights, was not enough to establish an entitlement to equitable tolling.").

  Plaintiff's alleged physical disabilities include plantar fasciitis, bone spurs, diabetes, and venous insufficiency. "Although the First Circuit has not specifically addressed whether physical medical conditions qualify as extraordinary circumstances, at least two other circuits

have held that physical medical conditions can qualify as extraordinary circumstances warranting equitable tolling." *Reaves v. Vidal*, No. 16-cv-10169-IT, 2017 WL 975944, at *2 (D. Mass. Mar. 13, 2017) (citing *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011); *Alonzo v. Pliler*, No. 01-55673, 2003 WL 57044, at *1 (9th Cir. Jan. 7, 2003); *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016)).  While this court predicts the First Circuit would allow for equitable tolling based on a physical medical condition that was sufficiently severe to prevent a plaintiff from timely filing, Plaintiff has not made a showing of such an entitlement in this case.

According to Plaintiff, her physical conditions individually and collectively made it exceedingly difficult for her to walk during the appeal period.  She was not, however, unable to walk, as evidenced by her walking up and down the steps in her home on average once per day, carrying in light groceries, and attending an in-person medical appointment.  Quite simply, Plaintiff has not pointed to sufficient evidence in the record to create a triable issue on the question of whether her physical conditions were severe enough to actually prevent her timely filing.  *Contrast Reaves*, 2017 WL 975944, at *3 (holding that a habeas petitioner's permanent quadriplegia, whereby he could not hold a piece of paper, hold or write with a pen, or hear without lip reading, combined with the Massachusetts Department of Correction's denial or ignoring of his requests for assistance, constituted extraordinary circumstances warranting equitable tolling).

Moreover, Plaintiff's physical conditions admittedly did not prevent Plaintiff from using a computer and a phone.  Yet Plaintiff did not recall inquiring of the courthouse about accessibility or any accommodations that might have been made to allow her to file in person. Plaintiff testified that she did not believe the courthouse was handicap accessible, but her belief was both unexamined and incorrect.  Additionally, Plaintiff failed to investigate the possibility of

filing her appeal by mail or electronically or to seek any assistance from anyone to file her appeal in person, including her many family members in the area. She offered a number of excuses in her deposition for not seeking their help, but those excuses do not add up to a showing of exceptional circumstances necessary to warrant equitable tolling.

## V.   Conclusion

For the foregoing reasons, I recommend that the court GRANT SPS's and BSEA's motions for summary judgment on the issue of Plaintiff's entitlement to equitable tolling and DISMISS so much of Plaintiff's amended complaint as constituted Plaintiff's appeal of *Ollie II*.[2]

/s/ Katherine A. Robertson<br>
KATHERINE A. ROBERTSON<br>
United States Magistrate Judge

DATED:  July 14, 2025

---

[2] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.